**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBRO REAL ESTATE HOLDING, LLC | ) | Judge Eugene Wedoff |
| | ) | |
| Debtor | ) | Case No. 09-10104 |
| _____ | ) | |
| | ) | |
| EBRO REAL ESTATE HOLDING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. _____ |
| | ) | |
| BANK OF AMERICA, N.A. (successor by | ) | |
| Merger to LaSalle Bank National Association) | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff EBRO REAL ESTATE HOLDING, LLC., Debtor and Debtor in Possession, ("Ebro RE" or "Debtor"), by its attorneys, pursuant to Bankruptcy Rule 7001(1), (2), (7), and (9), complaining against Defendant Bank of America, N.A., alleged successor by merger to LaSalle Bank National Association (the "Bank"), states as follows:

**Allegations Common to All Counts**

1.    The court has jurisdiction over this matter under 28 U.S.C. § 1334.

2.    This is a core proceeding under 11 U.S.C. § 157(a) and (b)(2)(B), (C), (H), and (K).

3.    On or about August 31, 2005, Ebro RE's affiliated company, Ebro Foods, Inc., in connection with its move to its present address at 1330 W. 43rd Place, Chicago,

1

Illinois (herein, the "Plant"), borrowed money from LaSalle Bank to upgrade the building it was leasing from the prior owners. The Bank provided to Ebro a line of credit in the principal amount of $250,000 ("the Original Loan").

4. Later in 2005 and in 2006, the Bank extended the line of credit to $600,000 (the "Extended Loan"), even though it was fully aware, by reason of the information provided in connection with the prior loan application, of Ebro's financial condition; the Bank knew, therefore, that there had been no increase in the profitability of the business from the time of the first loan in 2005 to the time of the extended loan in 2006 and that, thus, Ebro did not have an income stream that would provide funds to make the payments required under the extended loan.

5. At the time it extended the loan to Ebro, the Bank also knew that Ebro intended to use the extended loan proceeds to finance improvements to the Plant in which the Bank had an interest, since it already The loan facilitated the further improvements to the Plant.  However, the Bank did not disclose to Ebro its interest in the Plant.

6. Thereafter, the Bank through its agents initiated a foreclosure action against the prior owners of the Plant which Ebro had improved through the loan proceeds of the Extended Loan.

7. Upon the urging of the Bank and the offer to finance the purchase, the principals of Ebro and other investors formed Ebro RE to purchase the Plant.  The Bank then provided a real estate loan in the sum of approximately $2.3 million to the newly formed Ebro RE, the Debtor herein, in order to make it possible for Ebro RE to purchase the Plant from the prior defaulting owner, thus benefiting the Bank.  That loan will be referred to herein as the "Real Estate Loan".

8. Thus, the Bank made the Original Loan, the Extended Loan, and the Real Estate Loan specifically to facilitate the ultimate purchase of the Plant by Ebro RE.  The

transaction involved Ebro RE leasing the Plant to its affiliate Ebro as well as to other tenants in order to collect sufficient funds to make monthly mortgage payments to the Bank.

9. Ebro and Ebro RE used the proceeds of the Original Loan and the Extended Loan and the Real Estate Loan (herein collectively referred to as the "Bank Loans") to purchase and retro-fit the Plant for its operations.

10. The Bank conducted due diligence of Ebro and was aware of Ebro's financial condition at the time that it extended all of the Bank Loans.

11. When Ebro and Ebro RE experienced difficulty in meeting their obligations under the Bank Loans, as the Bank surely expected they would, the Bank called in the loans at the end of 2007.

12. Ebro's financial condition was substantially the same at the end of 2007 as it was in August 2005 and during 2005 and 2006, when the Bank was extending the Loans to Ebro and Ebro RE.

13. Ebro is a family owned business that has been in existence since 1965 and it had not faced any bank problems or failed to meet its financial obligations until it dealt with LaSalle Bank and its successor Bank of America in 2005-2008.

## COUNT I. FRAUD

14. Ebro RE restates the allegations contained in paragraphs 1-13 above as if fully set forth herein.

15. On information and belief, and unbeknownst to Debtor, at the time of the Bank Loans, the Bank was motivated to lend funds to Ebro and Ebro RE in order to get the Bank out of a bad situation with the Plant.

16. The Bank had an interest in the Plant prior to and at the time that it was extending the Bank Loans to Ebro to retro-fit the building, and at the time it extended the loan to Ebro RE to purchase the Plant.

17. The Bank intentionally withheld from Ebro and Ebro RE any knowledge of the Bank's interest in the Plant at the time of the Bank's negotiation and extension of its Bank Loans to Ebro and Ebro RE.

18. The Plant was subject to loans from the Bank at the time of sale and if the Plant had not been sold to Ebro RE at the price that it was, the Bank would have been prejudiced and would have suffered a loss on its prior loan.

19. The Bank's intentional failure to disclose its interest in the Plant to Ebro RE and its desire to have Ebro RE purchase the Plant with funds loaned by the Bank caused Ebro and Ebro RE to take on more debt than they could handle as is evidenced by the fact that the Bank called in the Bank Loans within a year after extending them.

20. The Bank's intentional concealment of its interest in the Plant at the time of the sale to Ebro RE and its extension of the Original Loan and Extended Loan to Ebro constitute a fraud that has damaged Ebro RE and contributed to its filing for bankruptcy.

21. Ebro and Ebro RE became aware of the Bank's concealment of its interest in the Plant and of its fraud in 2009 prior to Ebro RE's filing for Bankruptcy protection.

22. The Bank's knowing concealment from Ebro RE of is financial interest in the Plant and the circumstances surrounding the Plant and its sale to Ebro RE constitutes intentional misrepresentation of a material fact in the extension of the Bank Loans.

23. The withholding and concealment of material information was done with the intent of deceiving Ebro's shareholders to form Ebro RE in order to purchase the Plant, for the benefit of the Bank.

24. Ebro RE reasonably relied on the representations made to it by the Bank, void as they were of any disclosure about the Bank's financial interest in the Plant.

25. As a result of its reliance on the Bank's misrepresentation of the facts, Ebro RE and its affiliate Ebro acted to their detriment and, as a result, suffered severe damage, to be calculated on the following evidence: (a) Ebro RE would not have had to file for bankruptcy relief but for the Bank's calling in its Bank Loans, sweeping Ebro's bank account (thus interfering with Debtor's ability to pay the mortgage), breaching the privacy laws of banking institutions, and interfering with potential investors in Ebro and in Ebro RE; (b) not only was Ebro RE required to purchase the Plant for more than it was worth, but also Ebro had to pay an unbearably high rent to assure that Ebro RE would be able to pay the Bank's mortgage monthly, so that actions of the Bank that affected Ebro likewise affected Ebro RE; (c) Ebro was forced to incur higher Bank Loans from the Bank, and the Bank advanced such loans when it knew, on the basis of its due diligence, that payment of such loans would fatally overextend Ebro's finances, and thus adversely affect Ebro RE's ability to pay the mortgage, its utility, its taxes, and its other expenses; (d) since Ebro has suffered loss of business, attorneys fees, and damage to its reputation caused by the Bank's threatened foreclosure action and calling in the Bank Loans, Ebro RE has also been damaged by such actions of the Bank.

**WHEREFORE**, Debtor-Plaintiff EBRO REAL ESTATE HOLDING, LLC prays this Court to enter judgment in its favor and against Defendant Bank of America,

5

and for a award of compensatory damages in such sum as this Court, upon evidence to be presented in Court, finds would adequately compensate Debtor for the fraud perpetrated upon it by the Bank. Debtor also asks for punitive damages to the extent that the Court finds the Bank's actions to have been willful and malicious.  Debtor also asks for an award of attorney fees and costs, and for such other and further relief as may be just.

### COUNT II.   TORTIOUS INTERFERENCE

26. Ebro RE realleges here, as if set forth herein, the allegations contained in paragraphs 1-25 above.

27.  After the Bank called in the Bank Loans and caused Ebro and Ebro RE to be put on the market for sale, in whole or in part, the Bank intentionally interfered with Debtor's attempts to obtain investors who would have helped Debtor to emerge from its financial problems and continue to operate its business without the need for chapter 11 reorganization.

28. The Bank also cultivated is own potential purchasers for the Plant and the business of Ebro Foods, Inc., contrary to the interests of Ebro RE, thus further undermining efforts at reorganization outside of chapter 11.

29. The Bank's actions constitute a tortious interference with business arrangements being sought by Ebro and Ebro RE, resulting in severe damage, to be calculated on the following evidence:  (a) Ebro RE would not have had to file for bankruptcy relief but for the Bank's calling in its Bank Loans, breaching its privacy in violation of bank privacy laws, and interfering with potential investors in Ebro RE; (b) not only was Ebro RE required to purchase the Plant for more than it was worth, but also Ebro had to pay an unbearably high rent to assure that Ebro RE would be able to pay the Bank's

6

mortgage monthly, so that when the Bank called in Ebro's loans, it had an immediate negative effect on Ebro RE; (c) similarly, the value of the sole real estate asset of Ebro RE has been seriously and negatively affected due to the Bank's interference.

30. On information and belief, the Bank had a different agenda as to who would acquire the Ebro Plant, if Ebro RE had to sell the Plant or if Ebro RE were to go into bankruptcy. Such different agenda caused the Bank not to cooperate with Debtor's efforts but rather to interfere with Debtor's attempts to obtain new potential purchasers of or investors in Ebro RE

**WHEREFORE**, Debtor-Plaintiff EBRO REAL ESTATE HOLDING, LLC. prays this Court to enter judgment in its favor and against Defendant Bank of America, and for a award of compensatory damages the such sum as this Court, upon evidence to be presented in Court, deems to be adequate to compensate Debtor for the Bank's interference with Ebro RE's business relations, ultimately causing Debtor to have to file for chapter 11 relief. Debtor also asks for an award of attorney fees and costs, and for such other and further relief as may be just.

### COUNT III. BREACH OF PRIVACY

31. Ebro RE realleges here, as if set forth herein, the allegations contained in paragraphs 1-30 above.

32. The Bank, in its negotiations with Ebro RE, owed Debtor a duty to keep its negotiations with Ebro RE and its non-public information about Ebro and Ebro RE private, and not to share such information with others without Debtor's informed consent.

33. The Bank breached its duty to Debtor and breached bank privacy laws by disclosing Debtor's financial condition and confidential information related to Debtor's

banking relationship with the Bank by disclosing such information to another Bank customer that had expressed interest in acquiring the Plant.

34. The Bank did not receive Ebro RE's permission to share such information.

35. The Bank's sharing of Ebro RE's confidential bank information with Steve Duby without permission has interfered with Ebro RE's negotiations with Mr. Duby and others, and has put Ebro RE at a disadvantage in its attempts to reorganize.

36. As a result of such breach of privacy, Ebro RE has suffered severe damage, to be calculated on the following evidence: Ebro RE would not have had to file for bankruptcy relief but for the Bank's calling in its Bank Loans, sharing Debtor's confidential information with other Bank customers interested in purchasing the Plant, and interfering with potential investors in Ebro RE.

**WHEREFORE**, Debtor-Plaintiff EBRO REAL ESTATE HOLDING, LLC c. prays for judgment in its favor and against Defendant Bank of America as successor to LaSalle Bank in such sum as this Court shall determine in an evidentiary hearing. Debtor asks the Court for such other and further relief as shall be just.

### COUNT IV.  DETERMINATION OF EXTENT AND VALIDITY OF THE BANK'S LIEN

37. Ebro RE realleges here, as if set forth herein, the allegations contained in paragraphs 1-36 above.

38. Debtor brings this count pursuant to Rule 7001(2) to determine the validity and/or extent of the Bank's lien.

39. On the basis of the allegations set forth in Counts I and II (supra), the Bank's alleged lien against EBRO REAL ESTATE HOLDING, LLC. should be declared

8

invalid due to fraud in the inducement and material misrepresentation of material fact, as set forth above.

**WHEREFORE**, Debtor-Plaintiff requests that this Court conduct an evidentiary hearing and enter judgment in Debtor's favor and against Defendant Bank of America, finding that the Bank's lien against Ebro RE is invalid by reason of the Bank's fraud in obtaining the lien. Debtor asks for such other and further relief as may be just.

## COUNT V.  INJUNCTIVE RELIEF

40. Ebro RE realleges here, as if set forth herein, the allegations contained in paragraphs 1-39 above.

41. Bank of America has filed in Ebro RE's chapter 11 case a motion to lift the automatic stay in order to foreclose on Debtor's real property.

42. As is clearly indicated above in Count I, the Bank comes to this court of equity seeking relief with unclean hands, having perpetrated a fraud on the Debtor with respect to the claim asserted by the Bank in this chapter 11 case, and having committed other tortious conduct in the process of offering the loan and securing it with assets of the Debtor.

43. Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7001(9), this Court should refuse to grant the Bank the relief it seeks, since it obtained its advantage through fraud perpetrated on the Debtor.

44. It is a principle of the foundation of equity that to have standing the complainant must come into court with clean hands. *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). A party has unclean hands when, as in the instant case, the party has acted in bad faith and the bad faith

9

actions have "immediate and necessary relation" to the equitable remedy being sought. *Keystone Driller,* 290 U.S. at 245, 54 S.Ct. at 147. Here, the Bank has filed a proof of claim asserting obligations of the Debtor to the Bank which the Bank obtained through fraudulent behavior.

45. The Supreme Court has noted that the principle of unclean hands "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." [Precision Inst. Mfg. Co. v. Automotive M.M. Co., 324 U.S. 806, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945)](internal quotations omitted).

46. However, bankruptcy courts must exercise such discretion "within the confines of the Bankruptcy Code." [Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)]

47. Today, "unclean hands" implies that the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to. *Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir. 1985)

**WHEREFORE**, Debtor respectfully ask that this court strike and/or deny the Bank's motion to lift the stay and grant the Debtor such other and further relief as may be just.

    Respectfully submitted,

    EBRO REAL ESTATE HOLDING, LLC

    By:

    /s/ Forrest L. Ingram
    One of its attorneys

Forrest L. Ingram, #3129032
Patrick Lambe
Helena Milman
Gautham Kaveti
FORREST L. INGRAM, P.C.
79 W. Monroe, Ste. 900
Chicago, IL 60603
(312) 759-2838

11